UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN L. REINHARDT,<br><br>        Petitioner,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>        Respondent. | Case No. 3:13-CV-00279-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for consideration is Petitioner John Reinhardt's ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed June 24, 2013. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on February 16, 2010, alleging disability onset on November 23, 2006,

**MEMORANDUM DECISION AND ORDER - 1**

and claiming disability caused by hypertension and chest pain, gout, insomnia, headaches, arthritis, and memory loss. This application was denied initially and on reconsideration, and a hearing was conducted on August 18, 2011, by Administrative Law Judge (ALJ) James Sherry. After hearing testimony from Petitioner and vocational expert Jinnie Lawson, ALJ Sherry issued a decision finding Petitioner not disabled on September 16, 2011. Petitioner timely requested review by the Appeals Council, which denied his request for review on April 26, 2013.

Petitioner appealed this final decision to the Court on June 24, 2013. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of Petitioner's alleged disability onset date of November 23, 2006, Petitioner was thirty-seven years of age, and weighed over three hundred pounds. Petitioner completed his GED, and his prior work experience includes work as a welder's helper, a mechanic, landscape laborer, and construction laborer.

Petitioner's medical evidence is set forth by Petitioner in his brief, and indicates that he suffers from uncontrolled high blood pressure, sleep apnea, morbid obesity, diabetes, chronic obstructive pulmonary disease, depression, and anxiety. Pet. Brief at 4-7 (Dkt. 15.) Of note, Petitioner ceased working on November 23, 2006, due to an elbow fracture sustained at work and for which he sought medical treatment. At that time, Petitioner was told his blood pressure was dangerously high. Petitioner was unable to secure employment after that date, because he was unable to pass a pre-employment physical due to his blood pressure. (AR 66.)

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner has had no medical coverage since he ceased work, and no financial resources for medical care. Although he followed up with medical care providers for treatment of his elbow on November 2, 2006, December 8, 2006, and February 22, 2007, he did not seek medical treatment for his hypertension until April 9, 2010. On that date, Petitioner saw physician assistant John Beeh, who suggested a cardiac workup which Petitioner declined due to financial reasons.

Petitioner presented to the emergency room on April 20, 2010, complaining of worsening chest pain over the course of two months. Petitioner was admitted to the hospital and two stents were placed to resolve a seventy percent stenosis of his coronary artery. His treating cardiologist, Dr. Williams, noted on May 17, 2010, that "from my standpoint, he can return to work with no restriction. His wife requests 1 year of disability. I have explained that there is no cardiac reason for this." (AR 296.)

John Beeh and Dr. Jenkins continued to see Petitioner for check-ups following Petitioner's surgery. Despite medication to treat his high blood pressure, Petitioner continued to suffer from elevated blood pressure levels. (AR 315.) On August 6, 2010, Petitioner was referred to Dr. Luke Pluto for a sleep study, and as a result, was prescribed a C-PAP machine. On August 23, 2010, Dr. Pluto noted good sleep apnea control with the use of the C-PAP. On August 12, 2010, Petitioner was referred by Disability Services for a mental health exam, performed by Dr. Alexander. In Dr. Alexander's opinion, Petitioner had difficulty with concentration and persistence, which she indicated would be moderately impaired due to his depression and anxiety. (AR 375-76.) On August 10,

2011, after a follow up visit with Dr. Jenkins, Petitioner requested a letter regarding his ability to work. (AR 459.) According to Dr. Jenkins, Petitioner's hypertension is difficult to control, and until it is better controlled, Petitioner "should probably not be considered employable." (AR 457.)

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of November 23, 2006. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's coronary artery disease, status post stent placement; hypertension; sleep apnea; obesity; hyperlipidemia; diabetes; depressive disorder; and, generalized anxiety disorder severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listings 4.04C (heart conditions), 12.04 (affective disorders) and 12.06 (anxiety related disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

**MEMORANDUM DECISION AND ORDER - 4**

The ALJ found Petitioner was not able to perform his past relevant work as seedling planter, construction worker, maintenance worker, or scrap sorter given the heavy exertional demands of such work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined Petitioner retained the RFC to perform sedentary, unskilled work and could perform work as a document preparer.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

**MEMORANDUM DECISION AND ORDER - 6**

credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at steps four and five, arguing first that the ALJ did not properly evaluate the opinion of Petitioner's treating physician, Dr. Jenkins, who opined Petitioner would be unemployable because of uncontrolled high blood pressure. Second, Petitioner contends the ALJ erred because the ALJ did not incorporate Dr. Alexander's finding that Petitioner would have difficulty completing single stage commands in his RFC assessment, and by leaving that information out of the hypothetical given to the vocational expert, the RFC assessment is incorrect. Finally, Petitioner contends the ALJ did not sufficiently consider the effect of Petitioner's obesity upon his other impairments. At step five, Petitioner argues the ALJ's determination Petitioner could perform the work of document preparer exceeded Petitioner's reasoning ability. Each of these issues will be discussed in turn.

1. **Medical Opinions**

    A. *Dr. Jenkins and Petitioner's Physical Impairments*

    Petitioner argues that the ALJ's rejection of Dr. Jenkin's opinion that Petitioner

**MEMORANDUM DECISION AND ORDER - 7**

could not work was in error for four reasons. First, Petitioner contends the ALJ gave insufficient reasons for rejecting Dr. Jenkins' opinion given his status as a treating physician. Second, Petitioner argues the ALJ should have contacted Dr. Jenkins to clarify the basis for Dr. Jenkins' opinions given the vague reference by the ALJ to the opinions' inconsistency with treatment records. Third, Petitioner asserts it was error to rely upon the opinion of Dr. Williams, considering it was given a year prior to Dr. Jenkins' opinion. And finally, Petitioner contends that the ALJ ignored numerous subjective accounts of symptoms of hypertension contained in the record.

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the

opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Additionally, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Clear and convincing reasons must be given to reject a treating doctor's ultimate conclusion concerning disability, especially if the opinion is not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

ALJ SHerry rejected the opinion of Dr. Jenkins stating that until Petitioner's

hypertension is better controlled, he should probably not be considered employable. (AR 35.) The ALJ's reasons for rejecting Dr. Jenkins' opinion were that the opinion was inconsistent with treatment records indicating Petitioner's hypertension continued despite an increase in medication, but noted an absence of any subjective account of symptoms such as shortness of breath, imbalance, or chest pain accompanying Petitioner's high blood pressure. (AR 35.) In other words, there was no documentation in the medical records that Petitioner's hypertension caused overt physical limitations precluding him from working in a sedentary capacity. Petitioner did not report any limiting effects of his hypertension to his physicians throughout his course of treatment after stent placement. (AR 32.) And the medical records indicated that, despite continued high blood pressure readings, Petitioner reported he felt much better after the stent surgery; Dr. Williams was of the opinion Petitioner could resume work; and later cardiac follow-up appointments did not show any evidence that Petitioner's symptoms were worsening. (AR 33.)

Second, the ALJ noted that Petitioner and his wife both reported Petitioner could no longer do strenuous activities such as hunting, but that Petitioner enjoyed fishing, reading, going to the library, tending to his plants, visiting with neighbors and family, cooking occasionally, and socializing with friends. (AR 34, 35.) The ALJ noted that such activities were consistent with the ability to perform sedentary work. (AR 35.) And, the ALJ found Petitioner's reports as to the disabling effects of his symptoms not entirely credible. For example, Petitioner testified that because his feet swelled up daily, he had to elevate his feet once a day for an hour. (AR 32.) However, the ALJ noted that Petitioner

never reported such symptoms to his treating physicians throughout his course of treatment in 2011. (AR 32.)

Further, the ALJ noted that, although Petitioner lacked the financial resources to seek medical care, the lack of any great deal of effort to seek medical care given Petitioner's complaints of complete disability denigrated Petitioner's credibility. (AR 32.) Although Petitioner argues there was evidence of symptoms such as shortness of breath, Petitioner did not complain to his physicians about any limiting effects caused by those symptoms. The Court's review of the record supports the ALJ's credibility assessment, rendering him free to disregard Dr. Jenkins' opinion on Petitioner's ability to work.

Finally, the ALJ considered the medical opinions of state agency physician Husney, finding his opinion consistent with the evidence in the record and reflecting Petitioner's ability to perform sedentary work. (AR 35.) Specifically, Dr. Husney indicated Petitioner could perform sedentary work given Petitioner's history of stent placement, hypertension, and sleep apnea. The ALJ gave Dr. Husney's opinion regarding Petitioner's physical limitations great weight. (AR 34.) Dr. Husney's opinion, which was based upon a review of the entire record, constitutes substantial evidence and serves as an additional specific and legitimate reason for rejecting Dr. Jenkins' opinion on the ultimate issue of disability.

Petitioner attempts to cast doubt upon the ALJ's decision by cherry-picking items from the record. But the ALJ cited a plethora of reasons for rejecting Dr. Jenkins' opinion on the ultimate issue of Petitioner's disability, all of which satisfy the "clear and

**MEMORANDUM DECISION AND ORDER - 11**

convincing" standard. The ALJ noted the extensive clinical opinions in the medical records finding that, although Petitioner's blood pressure was not adequately controlled with medication, Petitioner was not reporting any disabling symptoms to his physicians. The ALJ noted not only the conflicting opinions of Dr. Williams, but also of the state agency reviewing physician, Dr. Husney. And the ALJ found Petitioner's credibility lacking regarding the extent of his physical symptoms.

None of the above evidence was ambiguous or contradictory, and therefore the ALJ had no duty to re-contact Dr. Jenkins regarding the basis for his opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996))(only "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"). The present record supports the ALJ's rejection of Dr. Jenkins' opinion; the ALJ's assessment of Petitioner's physical impairments, and his resulting ability to perform sedentary work, is not in error and is supported by substantial evidence in the record.

### B. Dr. Alexander and Petitioner's Mental RFC

Petitioner contends the RFC assessment by the ALJ failed to incorporate the limitations found by examining physician Dr. Alexander. Specifically, Petitioner argues the ALJ accepted Dr. Alexander's opinions, but did not include Dr. Alexander's findings of moderate limitations in Petitioner's ability to concentrate and persist. (AR 376, 33.) Petitioner argues the ALJ's statement that Petitioner is able to perform "simple, routine,

and repetitive tasks" fails to account for Petitioner's moderate deficiencies in concentration, persistence or pace.

Dr. Alexander's assessment noted Petitioner's difficulty with concentration and memory, and his moderate impairment in his ability to sustain concentration and persist. (AR 376.) Dr. Alexander noted also that Petitioner's difficulty concentrating "may" moderately affect his ability to follow instructions. (AR 376.) The ALJ stated he gave "significant weight" to Dr. Alexander's opinions. (AR 35.) The ALJ asked the vocational expert to assume an individual able to perform "simple, routine, repetitive tasks" in a "low-stress job with only occasional simple decision-making." (AR 80.) The ALJ's resulting RFC determination limited Petitioner to "simple, routine, and repetitive tasks, occasionally make simple decisions, and …occasional work setting changes with no fast-paced production requirements." (AR 31.)

Unlike the cases upon which Petitioner relies (e.g. *Brink v. Comm'r of Soc. Sec. Admin.*, 343 F.App'x 211, 212 (9th Cir. 2009); *Gray v. Astrue*, No. CV11-294-REB, 2012 WL 4097762 (D. Idaho Sept. 17, 2012)), to support his position, the ALJ here specifically relied upon the opinion of a nonexamining psychological consultant, Dave Sanford, Ph.D. (AR 34, 408.) Dr. Sanford completed a Mental RFC Assessment, and determined that, as to Petitioner's ability to sustain concentration and persistence, Petitioner was "not significantly limited" in any area other than the ability to carry out detailed instructions, in which Dr. Sanford found Petitioner to be moderately limited. (AR 408.) Dr. Sanford found Petitioner was capable of self-care, and spent time reading,

**MEMORANDUM DECISION AND ORDER - 13**

fishing, and going to the local library. (AR 410.) Dr. Sanford noted also that Petitioner sought no psychiatric hospitalizations or care, and found Petitioner's statements not entirely credible, and therefore found Petitioner capable of performing entry level type work. (*Id.*). The ALJ relied also upon the affirmation of Dr. Sanford's initial determination by psychological consultant Michael Dennis, Ph.D. (AR 34, 441.) In Dr. Dennis's report, he noted that August 2010 medical reports indicated Petitioner's mood and affect were normal. In March of 2011, Petitioner's mood was noted by Dr. Williams to indicate: "no depression, anxiety, or agitation." (AR 450.)

The Court finds the ALJ did not err in his assessment of Petitioner's limitations related to concentration, persistence, or pace, because the ALJ's assessment was consistent with Petitioner's limitations identified in the medical record as a whole. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (RFC of "simple, routine, repetitive" work is consistent with doctor's opinion that claimant can carry out "very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision."). Contrary to Petitioner's argument, the Court finds this case analogous to *Stubbs-Danielson*, because Dr. Alexander was not assessing Petitioner's work related abilities and whether he could perform work activities on a sustained bases. Dr. Sanford, however, assessed Petitioner's work abilities in his mental RFC assessment based upon a review of the entire record. Dr. Sanford concluded Petitioner retained the ability to carry out short and simple instructions, maintain attention and concentration for extended periods, and sustain an

**MEMORANDUM DECISION AND ORDER - 14**

ordinary routine based upon Petitioner's activities of reading, socializing, taking public transportation, visiting the library, and fishing. *See Stubbs-Danielson*, 539 F.3d at 1173.

Here, it is clear that the ALJ translated Dr. Alexander's opinions about Petitioner's ability to concentrate and persist consistent with Dr. Sanford's RFC assessment. Dr. Alexander indicated Petitioner's ability to concentrate and persist "<u>may</u> be moderately impaired," and that difficulty concentrating "<u>may</u> also moderately affect" Petitioner's ability to follow instructions. In other words, Dr. Alexander was not providing a definitive opinion. Petitioner's limitations were captured in Dr. Sanford's RFC assessment indicating Petitioner would be able to carry out short and simple instructions, but he would be moderately impaired in carrying out detailed instructions. The ALJ resolved the apparent disparity between Dr. Alexander's opinion that Petitioner "may" be affected by concluding, consistent with Dr. Sanford's opinion, that such an occasional effect would not significantly limit Petitioner's ability to maintain attention and concentration for an extended period during the work day.

The Court finds the ALJ's mental RFC assessment consistent with the medical records as a whole, and the evidence relied upon reasonably supports the ALJ's decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004) (court may not disturb credibility determination when the evidence reasonably supports the ALJ's decision). When a Petitioner may have deficiencies in concentration, persistence or pace, but has sufficient concentration and persistence to carry out short and simple instructions, sustain an ordinary routine without special supervision, and can perform at a

**MEMORANDUM DECISION AND ORDER - 15**

consistent pace without interruption, the ALJ's hypothetical including the ability to perform "simple, routine, repetitive tasks" adequately captures Petitioner's deficiencies in concentration, persistence or pace. *Stubbs-Danielson*, 559 F.3d at 1174.

2.  **Obesity**

Petitioner argues the ALJ erred because the ALJ did not state how he considered Petitioner's obesity or if it had any effect by itself or by exacerbating other impairments. The ALJ indicated that he "considered obesity in itself and its effects on other impairments" pursuant to SSR 02-1p, and noted Petitioner weighed 300 pounds and was six feet, one inch tall. (AR 35.) Petitioner contends the one line statement in the ALJ's written determination is insufficient to carry the day, because "consideration" means more than a single statement, and requires a detailed explanation.

The ALJ adequately considered Petitioner's obesity in his RFC determination. There was no evidence in the medical records that Petitioner's obesity limits his physical functioning. While it may exacerbate and be a cause of Petitioner's sleep apnea, not a single treatment note or any diagnosis addressed Petitioner's physical limitations due to obesity. Further, Petitioner did not present any testimony or other evidence at the hearing indicating whether or how his obesity impaired his ability to work.

The ALJ is required to consider an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02-01p (2002). As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairment. *Id.* Here, the ALJ

acknowledged that Petitioner is obese, and that he considered Petitioner's obesity to be a severe impairment. But, after weighing the evidence, the ALJ concluded Petitioner has the RFC to perform sedentary work with the following restrictions: occasionally climb ramps/stairs, never climb a ladder/rope/scaffold, occasionally stoop and crouch, and avoid moderate exposure to hazards, such as unprotected heights. (AR 31.) Sedentary work, by its definition, contains a lifting restriction of no more than ten pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

Based upon the record, the ALJ adequately considered Petitioner's obesity in his RFC determination. Petitioner has not set forth, and there is no evidence in the record, of any functional limitations as a result of his obesity that the ALJ failed to consider. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005).

3.  **Step Five Determination**

Petitioner argues that the job identified at step five is beyond Petitioner's reasoning ability as defined in the Dictionary of Occupational Titles (DOT). The ALJ found Petitioner capable of one job, document preparer, based upon his RFC assessment limiting Petitioner to understanding and performing simple, routine, and repetitive tasks, occasionally making simple decisions, and occasionally making work setting changes with no fast-paced production requirements. (AR 31.) According to Petitioner's argument, the DOT indicates the job of document preparer requires a reasoning level of 3, which is above Petitioner's ability based upon the ALJ's limitation to simple, routine,

and repetitive tasks, which in turn limits Petitioner to unskilled jobs with a reasoning level of 1.

The job of document preparer has a GED level of "R3, M1, L2" and an "SVP of 2." DICTIONARY OF OCCUPATIONAL TITLES Vol. 1 at 219 (Fourth Ed. Rev. 1991). Appendix C explains that the SVP, or Specific Vocational Preparation, is defined as the amount of lapsed time required by a typical worker to learn the techniques and develop the ability for average performance. Level 2 indicates that a worker would not need anything beyond a short demonstration up to and including one month. *Id.* Vol. 2 Appendix C at 1009. The GED, or General Educational Development requirement, includes those aspects of education required of the worker for satisfactory job performance. The GED scale is composed of three divisions: reasoning, mathematical, and language. *Id.* at 1009, 1012. A GED reasoning level of 3 requires a worker to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id*. at 1011. In contrast, a GED reasoning level of 1 requires a worker to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

When presented with the ALJ's RFC limiting Petitioner to simple, routine and repetitive tasks, the vocational expert found petitioner capable of performing unskilled work as a document preparer. (AR 36.) Unskilled work requires a worker to understand,

**MEMORANDUM DECISION AND ORDER - 18**

remember, and carry out simple instructions, and make simple work-related decisions. SSR 96-9p. The ALJ's finding that Petitioner could perform simple, routine, and repetitive tasks corresponds to Petitioner's ability to perform unskilled, SVP level 2 work, not to Petitioner's GED level. When the vocational expert was asked whether there were any conflicts between her testimony and the DOT descriptions of the job she identified, she testified there were not. (AR 84.)

Petitioner's focus on the GED level of the job of document preparer is misplaced. The GED level corresponds to the level of education required, not the performance of specific tasks that may be hindered by one's physical or mental impairments. Education is considered as a separate component of the disability analysis, together with consideration of an individual's RFC. 20 CFR § 404.1505(a), 416905(a) (indicating that a claimant's RFC and education are considered separately). Therefore, the educational level of the position is not relevant to the ALJ's RFC finding. *See Bollinger v. Barnhart*, 178 Fed. Appx. 745, 747 and n.3 (9th Cir. 2006) (affirming the ALJ's decision that a claimant, who could only follow "simple instructions," could work as an appointment clerk, which is categorized as a reasoning level 3 (DOT Vol. 1 at 207, defining appointment clerk as GED R3 and SVP 3)).[1]

---

[1] Although *Bollinger* is an unpublished disposition, Ninth Circuit Rule 36-3(b) provides that unpublished dispositions issued on or after January 1, 2007 may be cited to the courts of this circuit in accord with FRAP 32.1. Ninth Circuit Rule 36-3(a) indicates, however, that unpublished dispositions are not precedent. The Court finds *Bollinger* persuasive.

**MEMORANDUM DECISION AND ORDER - 19**

## CONCLUSION

The ALJ is the finder of fact and is responsible for weighing and drawing inferences from facts and determining credibility. It is not for the Court to second guess the ALJ's determination when the evidence is susceptible to more than one rational interpretation. The reasons given by the ALJ for rejecting the opinion of Dr. Jenkins as to Petitioner's ability to work met the clear and convincing standard. Further, the ALJ properly incorporated Dr. Alexander's findings into his RFC determination, and considered Petitioner's obesity. Finally, the ALJ properly evaluated Petitioner's ability to perform the job of document preparer. There was therefore no error.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **September 17, 2014**

Honorable Candy W. Dale
United States Magistrate Judge